GEORGE M. BEERS, Respondent, *v.* ROY H. McNAUGHT; Appel-
lant, Impleaded with ERASTUS WEEDEN CLARKE, Defendant.

First Department, December 29, 1916.

Corporations — liability of stockholders under agreement by which
stock was to be sold by either for their joint account — fraud inducing
purchase of stock — evidence — proof of fraudulent conspiracy.

Where two stockholders of a corporation to whom the stock had been
issued in equal lots, make an agreement by which their stock is to be
pooled and sold by either for their joint account, each stockholder
becomes the agent of the other and responsible for the fraud of the
other in selling the same, and one of said stockholders cannot escape
liability by any form of contract wherein an option is given by one to
the other at a certain sum.

But, after the expiration of said agreement and the issue of treasury
stock, one of said stockholders can only be held liable for the fraud of
the other in inducing a sale of such stock by showing a participation
in the fraud by said stockholder himself.

Evidence in an action in which it was sought to establish such liability
examined, and *held*, insufficient to establish the plaintiff's claim that
the corporation was organized for the fraudulent purpose of unloading
stock in which both stockholders participated or that after its organiza-
tion such purpose was formed and included the sale of the treasury stock
as well as the sale of the other stock.

While proof of fraudulent conspiracy is often necessarily circumstantial,
nevertheless, the inference of fraud must be clearly deducible from the
facts shown.

APPEAL by the defendant, Roy H. McNaught, from a judg-
ment of the Supreme Court in favor of the plaintiff, entered
in the office of the clerk of the county of New York on the
21st day of February, 1916, upon the verdict of a jury for
$5,505, and also from an order entered in said clerk's office on
the 29th day of February, 1916, denying defendant's motion for
a new trial made upon the minutes.

*James McNaught* of counsel [*W. Gibbes Whaley* with him
on the brief], for the appellant.

*Lewis Schuldenfrei,* for the respondent.

SMITH, J.:

The action is in fraud to recover from the defendant damages
suffered by the plaintiff in purchasing certain stock of a corpo-

ration known as the Erkins Company, the plaintiff insisting that such purchase was induced through fraudulent representations to which the defendant McNaught was a party. The defendant Clarke, although made a party to the action, was not served and did not defend.

In 1907 the Erkins Company was incorporated with a capital stock of $75,000. Forty-five thousand dollars of stock was issued and divided equally between these two defendants. In 1908 the defendants pooled their stock and made an agreement whereby each gave to the other an option upon his stock at $66.66 per share for the purposes of sale, with the understanding that any sale should be of a like amount of stock of both defendants, so that after such sale both should still have an equal amount of stock. The defendant McNaught made no sales of stock. The defendant Clarke, however, made various sales at $115 per share, accounting to McNaught at the rate of $66.66 for one-half of the stock sold. In making sales it was represented that McNaught was in feeble health and wanted to get out of the business for that reason. It is claimed by the plaintiff that this was a mere pretense for the purpose of effecting a sale. These sales were made down until November, 1909, when the pooling agreement was dissolved, and McNaught refused to sell any more of his personal stock. Meantime he and Clarke had absorbed the whole issue of stock, to wit, to the amount of $75,000, either in payment for services or for cash advanced. In December, 1909, Clarke effected a sale to this plaintiff of thirty-five shares of the treasury stock, the capital stock having been increased to $83,000. This sale was claimed to have been induced through misrepresentations fraudulently made by Clarke, for which the defendant McNaught is claimed to be responsible through a general conspiracy to use the corporation for the purpose of fraudulently selling its stock and making a profit therefrom.

Under the general agreement by which the stock of the defendants was to be pooled and sold by either party for their joint account, each defendant became the agent of the other, and responsible for the fraud of the other in selling the same, and the defendant McNaught could not escape liability by any form of contract wherein an option, so called, was given by one

to the other at a certain sum. In selling McNaught's stock Clarke acted as his agent, and was to receive for his services any sum above sixty-six dollars and sixty-six cents per share, and when the defendant McNaught received the avails of such sale he took them *cum onere*, with full responsibility for any fraud of Clarke in inducing the sale, however innocent McNaught may have been of the fraudulent means used. Upon the sale of the treasury stock, however, this rule cannot apply. That was not McNaught's individual stock. It was sold after the contract for the sale of the individual stock between McNaught and Clarke was at an end, and McNaught can only be made liable for Clarke's fraud in inducing that sale by showing a participation in the fraud by McNaught himself. That participation is sought to be established here in the plaintiff's claim that the corporation was organized for the fraudulent purpose of unloading stock in which both parties participated, or that after its organization such purpose was formed and included the sale of the treasury stock as well as the unloading of the stock of the individual defendants.

We are of the opinion, however, that the plaintiff has not proven such a fraudulent scheme. The business of the corporation was making benches, vases, fountains, founts, pedestals and statuary work for garden and house decoration. The proof is that the cost of manufacture of the stock was only about twenty per cent of the selling price. In 1908, which was a bad year, the company sold from $60,000 to $70,000 of merchandise, and made a profit of about $12,000 thereupon. This was repeated in 1909. Two expert accountants who examined the books and business of the corporation on behalf of intending purchasers reported the business of the corporation in excellent condition. It is not claimed that any facts were concealed from these accountants or any misrepresentations made to them. Of course, the balance sheet of a corporation depends largely upon the inventory of merchandise on hand, but any inventory made of this class of stock would necessarily be elastic, and would suffer a large shrinkage upon a forced sale. During 1908 and 1909 and in the spring of 1910, the company expended between $25,000 and $30,000 in fixing up a leasehold property upon Madison avenue. This of itself would absorb the

profits that were shown to have been made from the sale of merchandise. It is claimed by the plaintiff that Clarke represented that the company had paid dividends, but that fact, if true, made so little impression upon the plaintiff that he did not seek to ascertain what was the dividend paid. We are satisfied that the witness Henry stated more accurately when he said that the representation was that the company was a dividend payer, but that the dividends were made in increased salaries to the employees. All the stockholders were employees of the company. That McNaught was a sick man is shown by the evidence of Wood, the defendants' witness, whose manner of testifying leaves a strong impress upon the mind of his truthfulness and accuracy. If this had been a fraudulent scheme from the start between these two defendants, why were not the profits equally divided, and why should Clarke be given two-thirds of the proceeds of the sale of the stock owned by the defendants individually?

Plaintiff's stock was purchased in December, 1909. In January, 1910, it was discovered that more money was necessary, and in June of that year the company went into bankruptcy. This apparently was the result partly of the large amount put into the Madison avenue building and partly of the large amounts paid to the stockholding employees. It does not appear that the moneys put in the Madison avenue building was an unwise investment, as not only was the corporation put in a position to compete with the Tiffany Studios and other competitors, but parts of the building not used by the corporation were thereafter profitably rented to other tenants. The fact, however, that the treasury stock of the corporation was purchased by fraudulent representations of Clarke is far from proof of a fraudulent conspiracy between McNaught and Clarke by which the treasury stock of the corporation was to be unloaded for their benefit. The defendant McNaught, although apparently confused as to details of the stock transactions between him and Clarke as to individual stock, gave evidence which strongly negatived the existence of any preconceived fraud in the sale of this stock. While this evidence is that of an interested party there is no witness who contradicts him, and he is strongly corroborated by the witness Woods,

who never had any financial interest in the corporation and is not now connected in any way with the defendant McNaught. While proof of fraudulent conspiracy is often necessarily circumstantial, nevertheless the inference of fraud must be clearly deducible from the facts shown.

The judgment and order appealed from should be reversed on law and fact and a new trial granted, with costs to appellant to abide the event. The finding that the purchase by plaintiff was induced by any fraud of McNaught is reversed as against the evidence.

CLARKE, P. J., SCOTT, DOWLING and PAGE, JJ., concurred.

Judgment and order reversed, new trial ordered, costs to appellant to abide event.